See note to this case in 20 L. R. A. 40.— REP.

BLOODGOOD, Assignee, Appellant, vs. MEISSNER and others, Respondents.

*March 2 — March 21, 1893.*

(1, 3) *Husband and wife: Earnings: Exemptions.* (2) *Garnishment: Fraudulent judgment: Collateral attack: Evidence.*

1. Where the husband paid for all the provisions and defrayed all the household expenses, moneys paid to the wife for the board of her brother were not her individual earnings, but belonged to the husband.

2. In garnishment in aid of an execution, a fraudulent judgment suffered by the principal debtor in favor of the garnishee may be attacked; but the record of a successful attack upon such judgment in a prior action to which plaintiff was a stranger is not admissible in evidence in his behalf.

3. Under subd. 15, sec. 2982, S. & B. Ann. Stats. (providing that the earnings of a married person with dependent family, not exceeding $60 per month, for three months next preceding the issue of any attachment, etc., shall be exempt from seizure), the moneys of a debtor cease to be so exempt at the end of three months after they were earned, although within that time they were placed in the hands of his wife.

APPEAL from the Circuit Court for *Milwaukee* County.

Garnishment in aid of execution. Plaintiff's assignor, Moritz Meissner, was a judgment creditor of the defendant

*Max Meissner*, by judgment rendered September 13, 1884, for $867.88, for goods sold and delivered between April 2 and August 12, 1884. The garnishees *Abram* and *Joseph Breslauer* and *Bertha Meissner* answered separately, denying any liability. The Second Ward Savings Bank, the other garnishee, answered that *Bertha Meissner* had on deposit therein $1,005.82, and that it had "no other property of *Bertha Meissner*, and no property of said *Max Meissner*." The defendant *Max* answered, alleging that he was a married man, with a family, and claiming all indebtedness, if any owing to him by the garnishees, as exempt.

The plaintiff's evidence showed that *Max* and *Bertha Meissner* were husband and wife, and had been such since January, 1884, living together, and that since January, 1889, *Max Meissner* furnished his wife $15 a week, with which she paid grocery and butcher bills, while he paid the larger bills himself, thus defraying the entire household expenses. *Max Meissner* was employed by the defendants *Breslauer*, but the amount of his salary does not appear. Since January, 1887, *Bertha's* brother had boarded with *Max* and *Bertha*, and had paid $20 per month for such board directly to *Bertha*. The bank book showing *Bertha's* account with the defendant bank showed a balance in her favor of $1,005.82, in items mostly of $20 or $25 each, beginning in January, 1887, and ending in 1889 or 1890. She testified that the $20 items in the book were the payments of board money made by her brother (these items amounted to $640 or $660); also that her brother gave her as presents three of the $25 amounts; and that the balance of the $25 items, amounting to $250, she received from her husband. She claimed that the moneys so received from her husband were received as payments upon a judgment which she held against her husband. The judgment was introduced in evidence, and showed that it was rendered in her favor against her husband, August 20, 1884, for

$2,032.66, upon a judgment note given by *Max* to her, August 18, 1884. Execution was issued on this judgment at once, and a stock of goods belonging to *Max* was seized and sold, and $939.93 realized. The plaintiff offered in evidence, also, certain proceedings on the foot of this judgment, whereby it appeared that A. B. Geilfuss, as receiver, and George F. Gore, attaching creditors of *Max*, intervened by petition, and claimed to be paid out of the proceeds in the sheriff's hands, on the ground that said judgment was fraudulent as to creditors, and that upon trial of that issue it was decided that such judgment was fraudulent, and said creditors were adjudged to be first paid. Objection was made to these latter proceedings, which was sustained by the court.

Plaintiff attempted to examine *Mrs. Meissner* as to the consideration of the $2,000 judgment note on which the judgment was founded, whereupon objection was made that the judgment could not be collaterally attacked, and the objection was sustained. At the close of plaintiff's evidence the garnishee proceedings were dismissed, and from judgment of dismissal plaintiff appeals.

For the appellant there were briefs by *Bloodgood, Bloodgood & Kemper*, and oral argument by *J. B. Kemper*. They argued, among other things, that upon the evidence as it stood the court should have directed the jury to bring in a verdict for the plaintiff in the sum of $660. That amount, paid to *Mrs. Meissner* by her brother for his board, cannot be considered as her separate earnings. *Hamill v. Henry*, 69 Iowa, 752; *Flynn v. Gardner*, 3 Bradw. (Ill.), 253; *Barnes v. Moore's Estate*, 86 Mich., 585; *Reynolds v. Robinson*, 64 N. Y. 589; *Stamp v. Franklin*, 12 N. Y. Supp. 391; *Coleman v. Burr*, 93 N. Y. 26–7; *Tell v. Gibson*, 66 Cal. 249.

For the respondents there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *J. G. Flanders*. They contended, *inter alia*, that the moneys in

the bank deposited to the credit of *Bertha Meissner* were earnings of her husband, exempt by law at the time the same were paid to her by him, and not subject to garnishment. The owner of exempt property may sell or give it away, and when the title has passed to the vendee or donee the property is not subject to execution for the former owner's debts, whatever may have been his motive in the sale or gift. *Carhart v. Harshaw,* 45 Wis. 340; *Allen v. Perry,* 56 id. 189; *Chicago C. Co. v. Maxwell,* 70 id. 287; *Anderson v. Odell,* 51 Mich. 492. The meaning of the statute is that only earnings beyond sixty dollars per month can be reached by a creditor, and that up to that amount the debtor's right is absolute. *First Nat. Bank v. Weckler,* 52 Md. 30; *Union Pac. R. Co. v. Smersh,* 22 Neb. 751.

WINSLOW, J. We are clear that this judgment must be reversed.

I. The money received from *Mrs. Meissner's* brother for board must be held to be the money of the husband, it appearing that the husband paid for the provisions and defrayed all household expenses. *Hamill v. Henry,* 69 Iowa, 752; *Barnes v. Moore's Estate,* 86 Mich. 585. Under the circumstances here present, such board moneys cannot be held to be the individual earnings of the wife, so as to become her separate property under the provisions of sec. 2343, R. S. Being the property of the husband, she could not, as against his creditors, acquire title to them by gift from her husband, unless, indeed, they were exempt moneys, and this question we shall presently consider.

II. As to the $25 payments made directly by the husband to his wife, the question is somewhat different. It is claimed that these sums were paid her to apply on the judgment confessed by her husband in her favor in August, 1890. If this judgment was an honest judgment for money or property advanced out of the wife's separate property

to her husband, it would be competent for the husband in good faith to make payments thereon, and such payments would be valid as against creditors. If, however, the judgment was a fraudulent device for the purpose of covering the husband's property into the wife's hands, in fraud of creditors, it would furnish no consideration as against such creditors for the payments which the husband here made to the wife. The appellant attempted to show that the judgment was based on no consideration, and was fraudulent as to creditors; but an objection to such proof was sustained, on the ground that the judgment could not be collaterally attacked. This was error. Sec. 2320, R. S., provides, *inter alia*, that every judgment suffered with intent to hinder, delay, or defraud creditors shall be void as against the person so hindered, delayed, or defrauded. The attack of a creditor upon a fraudulent judgment suffered by his debtor must generally be in another and separate action, unless he have a specific lien upon a fund in court, when he may intervene and contest the right to the fund, as was done by Geilfuss and Gore in the action of *Meissner v. Geilfuss*, reported in 65 Wis. 377.

As garnishment under our statutes may perform the office of a creditors' bill, it is quite evident that a fraudulent judgment may be attacked by it. *La Crosse Nat. Bank v. Wilson*, 74 Wis. 391. See Bump, Fraud. Conv. (3d ed.), 521. The record of the successful attack made upon the judgment by the interveners, Geilfuss and Gore, was not, however, admissible in favor of the appellant. That was a proceeding between other parties in an action to which appellant was a stranger.

III. It is finally claimed that all the moneys in the wife's hands are exempt under the provisions of subd. 15, sec. 2982, S. & B. Ann. Stats. This section provides that the earnings of a married person with dependent family, for three months next preceding the issue of garnishment process, to

the amount only of $60 for each month, shall be exempt. First, it may be said on this point that there is no evidence in the record showing that the payments made by *Max* directly to his wife were made out of his earnings. For all that is shown by the record, these amounts may have been paid out of other property owned by *Max*. But on the theory that these sums came from his earnings, and that the board money may also be properly called " earnings," it is argued that they were exempt when given to the wife, and consequently always remain so. If this be good law, a very easy way has been discovered by which a debtor may in a few years accumulate a competence in the hands of his wife, and snap his fingers at importunate creditors. We cannot subscribe to such a view. This exemption is by the very terms of the statute temporary, not permanent. The earnings that are exempted are the earnings for three months next preceding the issuance of the garnishment process. If the earnings still remain in the hands of his employer, the exemption expires at the end of the three months. *Seligman v. Heller Brothers' Clothing Co.* 69 Wis. 414. We cannot understand the process of reasoning by which this exemption can be extended to three years by reason of the fact that the earnings are in the hands of the wife, instead of the employer.

These views necessitate a new trial.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.