## In re MAYER.

### (District Court, E. D. Wisconsin. January 16, 1900.)

1. BANKRUPTCY—REQUIRING BANKRUPT TO SURRENDER PROPERTY.

Where a bankrupt is shown to be in possession or control of money or property belonging to his estate in bankruptcy, and which he conceals or withholds from his trustee, the court of bankruptcy has power summarily to order him to surrender the same to the trustee, and to enforce his obedience to such order by punishment as for contempt.

2. SAME—PROPERTY IN POSSESSION OF THIRD PERSONS.

The power of a court of bankruptcy to order the bankrupt, under pain of punishment for contempt, to surrender to his trustee money or property constituting assets of his estate, and which he withholds from the trustee, cannot be employed to reach property which is in the hands of third persons, claiming title thereto by transfer or conveyance from the bankrupt prior to the bankruptcy proceedings, though such transfer was manifestly fraudulent, nor to force the bankrupt or his transferees to make restitution of money or property previously transferred in fraud of the act.

3. SAME—EVIDENCE OF BANKRUPT'S POSSESSION OR CONTROL.

Where application is made for an order requiring the bankrupt to surrender to his trustee money or property alleged to belong to his estate in bankruptcy, and the bankrupt denies that he has possession or control of the same, it must be shown by indubitable evidence, and beyond a reasonable doubt, either that the bankrupt actually has the present possession or control of the money or property in question, or that his alleged transfer or other disposition of it was fictitious or a mere subterfuge, such as would not prevent him from producing the property if required.

4. SAME—JURISDICTION OF REFEREE.

A referee in bankruptcy has jurisdiction of an application by a trustee in bankruptcy for an order requiring the bankrupt to surrender money or property of his estate alleged to be in his possession or control, and to be withheld or concealed from the trustee, and to make an order in accordance with his findings on such application.

**5. SAME—REVIEW BY JUDGE.**

On review by the district judge of an order made by the referee in bankruptcy, requiring the bankrupt to surrender to his trustee money or property alleged to be in his possession and to constitute assets of his estate, the ordinary rule as to the force of the referee's findings of fact is not applicable, because the determination is not governed by the weight of testimony; but it is the duty of the judge to ascertain that cause is shown for making such order, beyond a reasonable doubt.

### In Bankruptcy.

On examination and proceedings had before the referee, and on findings of fact thereupon filed, the referee entered an order on November 16, 1899, requiring the bankrupt to turn over to the trustee $6,635.02, as "money in his possession which he has failed to turn over," and to turn over and deliver to the trustee "merchandise in his possession which he has failed to deliver" to the amount and value of $22,700.91, "or the proceeds thereof in money," all within five days after due service, etc. On November 20th the bankrupt filed a petition for review and examination by the district court, and the matter was thereupon certified, together with a certificate by the referee that the time for compliance with said order expired on November 22, 1899, after due service, and that the bankrupt "willfully and contumaciously defied and disobeyed the said order" in said proceedings, and was guilty of contempt, and should be committed, etc.

Bloodgood, Kemper & Bloodgood, for creditors.
J. A. F. Groth and Timlin & Glicksman, for bankrupt.

SEAMAN, District Judge. The district court has the inherent general power to punish for contempts of its process and orders, and such power and duty are expressly provided in bankruptcy, to "enforce obedience by bankrupts, officers and other persons to all lawful orders by fine or imprisonment," or both, and to "punish persons for contempts committed before referees." Bankr, Act 1898, c. 2, § 2, cls. 13, 16; Id. c. 5, § 41. For money or property traced to the possession or control of the bankrupt, concealed and withheld from the trustee, this provision is applicable, and must be summarily enforced. It is not applicable, however, to reach property beyond the present control of the bankrupt, and in the hands of third parties claiming title derived prior to the proceedings in bankruptcy, although the transaction is manifestly fraudulent. Nor can this means or provision be employed to punish for frauds committed by the bankrupt against the bankruptcy act, nor can it be used to coerce the bankrupt or transferees to make restitution of money or property previously transferred in fraud of the act. Frauds which are made criminal by the act are punishable only on conviction by the verdict of a jury, or on plea of guilty, and fraudulent transfers which have been consummated cannot be reached by this summary proceeding. An order requiring the bankrupt to turn over money or property withheld from the trustee, when the bankrupt denies possession or control, can be so enforced only on indubitable testimony which establishes either the fact of his present possession, or that a purported transfer or disposition is a mere subterfuge by which the property manifestly remains within his control, and can be produced by him. And in a proceeding of this nature the order is sustainable only to the extent the testimony so establishes the fact of actual possession or control, with all reasonable doubt resolved in favor of the bankrupt. Ques-

tions of fraud in the transactions, and of the credibility and weight of testimony, must be left for determination in other proceedings, except within the strict rule above stated. Upon these premises I have examined the findings and testimony upon each of the three matters involved in the order, and have reached the following conclusions:

1. The sum of $6,635.02, found by the referee to be money in the possession of the bankrupt not turned over to the trustee, is the aggregate of two findings of fact: (1) Of moneys purporting to be paid to Mary Mayer, his wife; and (2) of moneys purporting to be paid to Anton Mayer, his brother. The amount so found as purporting to be paid to the wife will be first considered, namely, $3,583.02, which appears on the books to have been paid to her between January 4 and July 6, 1899, in various sums, and is claimed as repayment of advances made by the wife from time to time for expenses of the business. The referee finds that this account is fictitious, that no such advances were made by the wife from her separate estate, and that the money belongs to the bankrupt and is still in his possession. The referee states that the further sum of $6,000 was in fact paid to the wife by the bankrupt within the same time, of which only $1,000 was her separate property, and $500 belonged to their children, and that no indebtedness existed in her favor for the remainder, but that the money was actually paid to her, and is not in the bankrupt's possession. Whether the last-mentioned sum is correctly stated at $6,000, or whether such separate payment is composed alone of $5,000 which was obtained by the bankrupt through a mortgage upon his real estate, now claimed as a homestead, I have not deemed essential for determination, as the finding of the referee is approved, that any sum so paid appears by the testimony to have been placed beyond the present power of the bankrupt to pay the same over to the trustee, and is further largely in excess of any separate estate shown in the wife, aside from the claim for money received from boarders, which cannot be regarded as individual earnings (Bloodgood v. Meissner, 84 Wis. 452, 54 N. W. 772), and, even if so treated, would be covered by such payment. The account of $3,583.02 of purported payments to the wife is either fictitious, as found by the referee, or a manifest subterfuge on the part of the bankrupt to retain that amount for his own use and benefit. The assertion of advances by the wife from her own means is discredited by all the circumstances, and this amount must be regarded as within the possession and control of the bankrupt; and the finding, to that extent, is approved.

2. The remainder of the sum of $6,635.02 is made up of $3,052 purporting to have been paid to Anton Mayer, the brother and employé of the bankrupt, for services, of which the referee finds that the account is fictitious, and that the money was not paid to him, and is in possession of the bankrupt. It must be conceded that the testimony introduced in support of this claim and of the payment is inconsistent in many particulars, and is by no means convincing of the bona fides of the entries or payments as shown in the books. Nevertheless, both the bankrupt and Anton Mayer testify positively to the fact of such payment in accordance with the entries; and,

laying aside the questions of fraud and ultimate liability in respect of the transactions, I am of opinion that the narrow issue of payment in fact cannot be determined as conclusively established against the testimony of both witnesses on this inquiry as to actual possession or control by the bankrupt over this amount.

3. The finding of merchandise to the amount and value of $20,392.39 in the hands of the bankrupt is predicated on a showing which raises strong suspicion of a large amount of goods unaccounted for during the half year preceding the failure, but the testimony is deemed insufficient to establish beyond reasonable doubt the fact of abstraction of goods from the stock. No surreptitious transactions are shown respecting the goods, notwithstanding inquiry and search to that end which appear to have been diligently pursued. The discrepancy stated in the findings rests upon valuations taken of the stock on hand without the presence of the bankrupt, not in reference to the present inquiry, not based on the bills rendered for the purchases nor on the actual cost to the bankrupt, and offered for this issue after the goods have passed beyond reach for testing the valuations by the bills,—a test which would otherwise be practicable for a large portion of the stock made up of recent purchases. The testimony of certain of the appraisers that such valuations would approximate the cost to the bankrupt is forcibly met by proof of numerous instances wherein the cost, as shown by the bills, materially exceeds the appraisal; and, after extended enumerations from the inventory in comparison with the bills, an estimate of such excess is tendered which would cover the discrepancy. Whether the shortage is thus satisfactorily accounted for is not the test, but it is sufficient that the valuation which constitutes the sole basis of the charge is placed in doubt, both as to a definite amount and as to the fact of surreptitious taking of goods, and no ground is established for an order of this nature to turn over either certain goods or a definite amount on pain of imprisonment; and, so regarded, the order, to that extent, is not sustainable.

The jurisdiction of the referee to entertain the hearing in question, and to enter an order thereupon, is undoubted, and the objection to such hearing interposed on behalf of the bankrupt was properly overruled. On review of the order in such case, I am of opinion that the ordinary rule as to the force of the findings of fact is not applicable, for the reason that determination is not governed by the weight of testimony. Enforcement of the order devolves upon the reviewing court, and with it the duty to ascertain that cause exists, beyond reasonable doubt, for the exercise of the severe means thus intrusted to the court, where an error in judgment as to the credibility or force of testimony involves indeterminate imprisonment without just cause. Let this opinion be certified to the referee for modification of the order in accordance therewith, and further proceedings thereupon as advised.